```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
PATRICK GENNARDO,

                Plaintiff,

     -against-                           MEMORANDUM AND ORDER
                                         06-CV-5509 (JS)
MICHAEL J. ASTRUE, Commissioner of
Social Security,¹

                Defendant.
-----------------------------------X
APPEARANCES:

For Plaintiff:      Patrick Gennardo, Pro Se
                    210 Villa Drive
                    Massapequa, New York 11758

For Defendant:      Denise McGinn, Esq.
                    United States Attorney's Office
                    Eastern District of New York
                    610 Federal Plaza
                    Central Islip, New York 11722
```

SEYBERT, District Judge:

Pro se Plaintiff Patrick Gennardo ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 405(g), challenging the Defendant Commissioner of Social Security's (the "Commissioner") denial of his application for disability insurance benefits. Presently pending are Plaintiff's and the Commissioner's motions for Judgment on the Pleadings. For the reasons explained below, the Commissioner's motion is GRANTED and Plaintiff's motion is

---

¹ Michael J. Astrue became the Commission of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue automatically substituted Jo Anne B. Barnhart as Defendant in this action. The Court directs that the Clerk of the Court update the docket accordingly.

DENIED.

BACKGROUND

I. Procedural History

In March 2004, Plaintiff filed an application for disability benefits with the Social Security Administration ("SSA"), claiming that a cardiovascular condition, chronic angina, acute cellulitus of right leg, and prostate cancer precluded him from working since December 2003. (Record of Proceedings 32, 39.) By letter dated, June 21, 2004, SSA denied Plaintiff's application for disability benefits. (R. 17-20.) After being denied benefits, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"), which was held on April 20, 2006 before ALJ Seymour Rayner. (R. 21, 209.) Plaintiff was represented by counsel, Cindy Apetaker, Esq., at the hearing. (R. 209.) Pursuant to an order, dated May 19, 2006, ALJ Rayner found that Plaintiff was not disabled and, therefore, not entitled to disability benefits. (R. 15.) Plaintiff then appealed ALJ Rayner's determination (R. 7.) When the Appeals Council denied Plaintiff's request for review on August 14, 2006, ALJ Rayner's decision became the final decision of the Commissioner. (R. 3-6.)

II. Factual Background

A. Work History

Plaintiff is a sixty-eight year old male who has completed some college. (R. 213.) At one point, Plaintiff

possessed licenses as a stockbroker, real estate broker and insurance broker, but never renewed them. (R. 213-14; Pl.'s Mem. 5-6.) The majority of Plaintiff's work experience is as a salesperson. Specifically, in the 15 years prior to December 23, 2003, the last day he worked, Plaintiff held jobs as a real estate broker, salesperson, and manager in a personal security business. (R. 40.) For approximately seven and one-half years prior to December 2003, Plaintiff was an account executive, for two different companies, selling medical software and radiology equipment. (R. 40, 72, 214.) As an account executive, Plaintiff was required to travel by car daily to meet prospective clients, and the job involved varying amounts of walking, standing, and sitting. (R. 73, 214.) From approximately January 1994 to April 1996, Plaintiff was chief operations manager for a personal security business, which provided security to high-profile individuals. (R. 40, 72, 215.) For approximately five years prior to his job in personal security, Plaintiff was a telephone salesperson in the food distribution industry, which required Plaintiff to sit eight hours per day. (R. 72, 77.) Prior to that, Plaintiff worked as a commercial real estate broker for approximately three and one-half years, from June 1985 to January 1989. (R. 72.)

Plaintiff stopped working on December 23, 2003 because of cellulitis of his right leg and contends that, although the

cellulitis improved, he was unable to return to work as a salesperson because of side effects from his various other conditions and medications, namely, shortness of breath, hot flashes, lack of physical stamina, and vision problems. (R. 219-220.)

B. Medical History

1. Prior To Onset Of Alleged Disability

In 1995, Plaintiff was diagnosed with prostate cancer. He was treated with radioactive seed implantation in 1996 and Viodor implants in 2003 and 2004. (R. 155.) In addition, Plaintiff has received, and continues to receive, hormonal therapy of different sorts since before 2000. (R. 202.) Dr. Eric Thall, Plaintiff's current urologist, has been treating Plaintiff since June 1998, and states that as of April 2006, Plaintiff "continues to be stable with advanced prostate cancer." (R. 154, 202.)

On November 13, 2001, Plaintiff was admitted to Winthrop University Hospital complaining of chest pain radiating to both arms. (R. 135.) After undergoing a cardiac catheterization, Plaintiff was diagnosed with severe coronary artery disease and moderate left ventricular systolic dysfunction. (R. 147.) As a result, Plaintiff had a quadruple bypass on November 15, 2001. (R. 151.) Within approximately five to six weeks after the bypass, Plaintiff returned to work. (R. 218.)

4

2.  Onset Of Alleged Disability - December 2003

On December 25, 2003, Plaintiff was admitted to New Island Hospital complaining of swelling and redness of the right leg. (R. 94.) Plaintiff was diagnosed with right leg cellulitis and a necrotizing skin infection. (R. 94-95, 103-05.) After spending approximately 12 days in the hospital, Plaintiff was discharged with intravenous antibiotics on January 6, 2004 and instructed to follow up. (Tr. 94-95, 118.)

Dr. Vijay Shah of the Hyperbaric Wound Center at New Island Hospital examined Plaintiff on January 9, 2004. (R. 118-19.) Dr. Shah reported that the swelling of the right leg had significantly improved, and Plaintiff did not have chills or a fever. (R. 118.) Dr. Shah recommended that Plaintiff continue with the intravenous antibiotics until January 15, 2004 and to follow up with the Wound Center. (R. 119.) Additionally, on January 9, 2004, a CT Scan of Plaintiff's abdomen and pelvis was performed with "essentially unremarkable" results. (R. 130.) On February 2, 2004, Plaintiff was prescribed a support stocking for his right leg to keep down the swelling. (R. 117, 217.) Plaintiff has suffered only this one episode of cellulitis; the cellulitis has not returned since the late 2003-early 2004 hospitalization. (R. 218.)

On April 6, 2004, Dr. Thall, Plaintiff's urologist, completed a history and report regarding Plaintiff's prostate

5

cancer in response to an official request related to Plaintiff's application for disability benefits. (R. 154-59, 162.) At that point, Dr. Thall had last examined Plaintiff on March 24, 2004 and indicated that he treated Plaintiff monthly. (R. 154.) Dr. Thall reported Plaintiff's diagnosis as prostate neoplasm, with symptoms of urinary frequency and nocturia. (Id.) Dr. Thall had treated Plaintiff with Viodor implants in 2003 and 2004 and indicated that Plaintiff's PSA was responding. (R. 155.) At that time, Dr. Thall opined that there were no limitations on Plaintiff's ability to perform work-related physical activities. (R. 157-58.)

        3.    <u>After Plaintiff Became Eligible For Retirement Benefits</u>

On June 4, 2004, Dr. Jasjit Pawha performed a consultative internist examination. (R. 176, 179.) After recounting Plaintiff's medical history, Dr. Pawha noted that Plaintiff appeared to be in no acute distress, his gait and stance were normal, and he was able to fully squat. (R. 177.) Plaintiff reported to Dr. Pawha, however, that he experienced shortness of breath and tired easily. (Id.) Plaintiff's blood pressure was 140/88 in the mild hypertension range.[2] (Id.) Plaintiff was able

---

[2] Normal blood pressure for adults is classified as the systolic reading being 120 mm HG or below and the diastolic reading being 80 mm HG or below. Systolic readings between 120-39 or diastolic readings between 80-89 are classified as pre-hypertension. Mild hypertension is classified as systolic readings between 140-59 or diastolic readings between 90-99. <u>See</u> THE MERCK MANUAL OF DIAGNOSIS AND THERAPY 607, Table 71-1 (18th ed. 2006).

to change for the examination and get on and off the examination table unassisted. (Id.) Dr. Pawha's examination revealed that there is a marked hyperpigmentation of almost the entire right lower leg and patchy areas of hyperpigmentation of the right thigh. (Id.) Additionally, Plaintiff's right calf was mildly swollen. (R. 178.) Dr. Pawha noted extensive surgical scars on the legs and a midline surgical scar on the chest. (Id.) An x-ray revealed an enlarged heart and confirmed no active lung disease. (R. 179, 181.) Based on the consultative examination, Dr. Pawha opined that Plaintiff had mild restriction for sitting, a mild-to-moderate restriction for standing and walking, and a moderate restriction for lifting, carrying, pushing, and pulling. (R. 179.)

On June 18, 2004, Dr. J. Reddy, a State Agency physician reviewed Plaintiff's records and opined that Plaintiff could perform work at the light level of exertion.[3] (R. 182.) More specifically, Dr. Reddy opined that Plaintiff could lift up to 20 pounds and sit, walk and stand for six out of eight hours. (Id.)

On August 2, 2005, Dr. Steven Grainer, Plaintiff's cardiologist, reported that Plaintiff was being treated for

---

[3] Light work is defined by statute as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. To be considered capable of performing a full range of light work you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

7

coronary artery disease. (R. 200.) Subsequently, in a letter dated April 25, 2006, Dr. Grainer explained that Plaintiff suffers from cardiovasular impairment from left ventricular dysfunction, which is documented by his November 13, 2001 catheterization with an ejection fraction of 40%. (R. 201.) Additionally, Dr. Grainer noted that Plaintiff had shortness of breath with activity suggestive of anginal equivalent. (Id.) Dr. Grainer opined that Plaintiff's "cardiac decompensation and symptoms are suggestive of Class II congestive heart failure." (Id.)

By letter dated April 26, 2006, Dr. Thall indicated that Plaintiff was no longer able to perform sexually but, as of April 2006, was stable with advanced prostate cancer. (R. 202.) Dr. Thall's assessment was that Plaintiff's work-related function abilities were not limited by his prostate cancer. (R. 203-05.)

Although not part of the record, Plaintiff submitted a medical assessment form completed by Dr. Grainer, his cardiologist, dated March 6, 2007. (Gennardo Aff. Ex. H.) Dr. Grainer opines that Plaintiff can lift or carry less than ten pounds, stand and walk less than four hours in an eight-hour workday, and sit for eight hours, getting up each hour. These determinations are based on Plaintiff's "persistent lower extremity swelling with history of cardiomyopathy and cellulitis." (Id.)

8

## DISCUSSION

I. <u>Standard Of Review</u>

In reviewing the ruling of the ALJ, this Court will not determine <u>de novo</u> whether Plaintiff is in fact disabled, but rather, this Court must determine whether the ALJ's findings are supported by "substantial evidence in the record as a whole or are based on an erroneous legal standard." <u>Curry v. Apfel</u>, 209 F.3d 117, 122 (2d Cir. 2000)(internal quotations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Id.</u> (internal quotations omitted). The substantial evidence test applies not only to the ALJ's findings of fact, but also to any inferences and conclusions of law drawn from such facts. <u>See</u> <u>Johnson v. Barnhart</u>, 269 F. Supp. 2d 82, 84 (E.D.N.Y. 2003). This Court must examine the entire record, including any conflicting evidence and any evidence from which conflicting inferences may be drawn when deciding if the findings are supported by substantial evidence. <u>See</u> <u>Gonzalez v. Barnhart</u>, No. 01-CV-7449, 2003 WL 21204448, at *2 (E.D.N.Y. May 21, 2003) (internal quotations omitted). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).

When a court finds that substantial evidence exists to support the Commissioner's decision, the decision will be upheld,

9

even if evidence to the contrary exists. See Johnson, 269 F. Supp. 2d at 84. The Court may not substitute its own judgment for that of the ALJ just because this Court would come to a different conclusion after a de novo review. See Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991)(internal quotations omitted).

II. Establishing A Disability

An applicant must be disabled within the meaning of the Social Security Act (the "Act") to receive federal disability benefits. See Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); 42 U.S.C. § 423(a), 423(d). A claimant is disabled under the Act when he can show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairment must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A).

The Commissioner must apply a five-step analysis when determining if a claimant is disabled as defined by the Act. See Shaw, 221 F.3d at 132. First, the claimant must not be engaged in any substantial gainful activity. See 20 C.F.R. § 404.1520(b). Second, the claimant must prove that he or she suffers from a

10

"severe impairment" that significantly limits his or her mental or physical ability to do basic work activities. See 20 C.F.R. § 404.1520(c). Third, the claimant must show that his or her impairment is equivalent to one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. See 20 C.F.R. § 404.1520(d). Fourth, if his or her impairment or its equivalent is not listed in the Appendix, the claimant must show that he or she does not have the residual functional capacity to perform tasks required in his or her previous employment. See 20 C.F.R. § 404.1520(f). Fifth, if the claimant successfully makes these showings, the Commissioner must determine if there is any other work within the national economy that the claimant is able to perform. See 20 C.F.R. § 404.1520(g). The claimant has the burden of proving the first four steps of the analysis, while the Commissioner carries the burden of proof for the last step. See Shaw, 221 F.3d at 132. "In making the required determinations, the Commissioner must consider: (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family and others; and (4) the claimant's educational background, age and work experience." Boryk v. Barnhart, No. 02-CV-2465, 2003 WL 22170596, at *8 (E.D.N.Y. Sept. 17, 2003)(internal citation omitted).

As an initial matter, the Court notes that this case

involves an application for disability benefits for a relatively short period - December 23, 2003 through June 2004, the month in which Plaintiff reached age 65. See 20 C.F.R. §§ 404.201 et seq. and 404.317. Accordingly, the relevant medical evidence is that related to the period between December 23, 2003 and June 2004. Any medical assessments concerning Plaintiff's condition after Plaintiff reached full-retirement age are irrelevant for purposes of determining whether he should have received disability benefits, because an individual receiving disability insurance benefits who then reaches retirement age is converted to retirement insurance benefits.

Here, the ALJ followed the five-step analysis. He first determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date - December 23, 2003. (R. 13.) ALJ Rayner then found that the medical record establishes the presence of severe impairments consisting of status post-coronary artery bypass grafting, stage II prostate cancer, hypertension and macular degeneration, none of which, however, are equivalent to the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.) As a result, ALJ Rayner next considered whether Plaintiff has the residual functional capacity to perform his past employment.

Based on all the evidence, with greatest weight placed on Dr. Thall's assessment, ALJ Rayner found that Plaintiff had the

functional capacity to perform sedentary work. That is, sit for six hours in an eight-hour workday, stand and walk for two hours in an eight-hour workday and lift and carry ten pounds. (R. 14.) ALJ Rayner then concluded, based on Plaintiff's ability to perform sedentary work, that Plaintiff was able to perform his past work as a telephone salesperson and stockbroker. (Id.) Accordingly, ALJ Rayner determined that Plaintiff was not disabled and not eligible to receive disability insurance benefits. (Id.)

This Court finds that there was substantial evidence in the record to support the ALJ's finding that Plaintiff, for the period in question, was not disabled as defined by the Act. While evidence supporting Plaintiff's claim of disability is present in the record, the function of this Court is not to substitute its judgment of credibility and probative value for that of the ALJ. The ALJ has applied the proper legal standards for assessing Plaintiff's claim, and has considered all of the evidence presented, placing greatest weight on Dr. Thall's, Plaintiff's treating urologist, assessment, one of which was completed in April 2004, during the relevant period.

The Court realizes that Plaintiff never worked as a stockbroker. Although the ALJ incorrectly stated that Plaintiff had the functional capacity to perform his past work as a stockbroker, such error does not warrant reversal or remand because ALJ Rayner also considered Plaintiff's past work as a telephone

13

salesperson. While the Court understands and does not overlook the fact that Plaintiff spent a majority of his career in outside sales, requiring him to travel daily and spend a considerable amount of time in the car, the record also indicates that for approximately five years within the 15 years prior to Plaintiff's alleged onset of disability, Plaintiff was a telephone salesperson in the food distribution industry, which required Plaintiff to sit eight hours per day. (R. 72, 77.) The record, therefore, supports ALJ Rayner's determinations, and this Court finds no basis to disturb his decision.

Finally, with respect to Dr. Grainer's medical assessment, dated March 6, 2007, which Plaintiff submitted as an exhibit to his memorandum of law in support of his pending motion, even if the Court chose to consider it, there is no indication that it relates to the relevant period in question – the first half of 2004. Accordingly, Dr. Grainer's assessment does not sway this Court to reverse or remand the ALJ's decision.

## CONCLUSION

For all of the reasons set forth herein, the Commissioner's motion for judgment on the pleadings is GRANTED. The Clerk of the Court is directed to mark this case CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: Central Islip, New York
      March 25, 2008